In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 06-3880

LOUIS GOROS, *et al.*,

*Plaintiffs-Appellants*,

*v.*

COUNTY OF COOK and MICHAEL SHEAHAN,
as Sheriff of Cook County,

*Defendants-Appellees*.

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 04 C 883—**Virginia M. Kendall**, *Judge*.

---

ARGUED MAY 22, 2007—DECIDED JUNE 11, 2007

---

Before EASTERBROOK, *Chief Judge*, and WILLIAMS and
SYKES, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. According to the litigants,
this appeal presents the question whether Cook County's
Ordinance 00-O-8 supersedes Ordinance 5-325. If it does,
then the Sheriff of Cook County is entitled to adopt a
policy under which a newly promoted worker becomes
eligible for a further raise (a "step increase" in the
County's parlance) after waiting a time that varies with
each step. If Ordinance 5-325 remains in force, and a
collective bargaining agreement has the meaning that
plaintiffs give it, then the promoted worker becomes
eligible for the first six step increases on the anniversary
date of his employment.

An example illustrates. Perkins is hired as a member of the Sheriff's Police on February 1, 2001, at the base wage level of PO1 Step 1. The next six years bring step increases, until the officer reaches Step 6 on February 1, 2006. Step 7 and its accompanying raise comes on the tenth anniversary of employment (February 1, 2011), Step 8 at Anniversary 15, and the remaining steps at Anniversaries 20, 25, and 29. Suppose that Green, also hired on February 1, 2001, has an initial wage set at PO1 Step 6 in order to match or exceed his salary in his former employment. When does Green get a step increase? Plaintiffs say that he should go to Step 7 on February 1, 2002, with the ensuing steps one year apart; Green will reach Step 11 (the highest possible level for PO1) on February 1, 2006. The Sheriff maintains, however, that Green must wait until his tenth anniversary to reach Step 7, just as Perkins does; on this understanding Perkins will catch up with Green's salary on February 1, 2011, when both will achieve Step 7. Neither Perkins nor Green will reach Step 11 until 2029. Yet another possibility is that Green should be placed in Step 7 after spending five years at Step 6, just as Perkins will. On that approach Green will receive his first raise on February 1, 2005, and will reach Step 11 in 2024, earning more than Perkins in every year until 2029.

Federal courts regularly resolve disputes of this kind under the diversity jurisdiction. 28 U.S.C. §1332. That jurisdiction is available, however, only when the stakes for at least one plaintiff exceed $75,000 and all plaintiffs have a citizenship different from that of each defendant. In this case, however, every litigant is a citizen of Illinois, and none of the plaintiffs alleges that his stakes exceed $75,000. So what is the litigation doing here?

Plaintiffs' answer is that the case arises under federal law, so that 28 U.S.C. §1331 supplies jurisdiction. The "federal law" that plaintiffs invoke is 42 U.S.C. §1983, but

that statute covers only "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. Neither Ordinance 5-325 nor the collective bargaining agreement is part of the Constitution or laws of the United States. Plaintiffs' theory is that the Ordinance and collective bargaining agreement create a "property interest" within the scope of the due process clause of the fourteenth amendment. The Sheriff's personnel practices, according to plaintiffs, deprive them of this property interest. The district court held, however, that plaintiffs' understanding of the local ordinances and collective bargaining agreements is incorrect and entered summary judgment for the County and the Sheriff. 2006 U.S. Dist. LEXIS 68932 (N.D. Ill. Sept. 25, 2006).

If this approach to §1983 and the federal-question jurisdiction is right, however, then *every* claim against *any* state actor may be litigated in federal court, no matter how small the stakes and no matter the parties' citizenships. One wonders why the Supreme Court bothered to hold in *Moor v. County of Alameda*, 411 U.S. 693 (1973), that a county is a "citizen" of its state for purposes of the diversity jurisdiction, if §1332 never were necessary to litigate against a county in federal court. The reason *Moor* was important is that §1983 and §1331 in combination do *not* allow state-law claims to be litigated in federal court just because the defendant is a state actor and the plaintiff takes care to assert that state law creates a "property interest."

The due process clauses in the fifth and fourteenth amendments do not protect property interests unconditionally. They say that no one may "be deprived of life, liberty, or property, without due process of law". Due process usually means notice and an opportunity for a hearing. State law defines property; federal law defines the process that is "due." See *Board of Regents v. Roth*, 408

U.S. 564 (1972), and *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), among many similar decisions. Plaintiffs do not want hearings, however; there are no factual disputes. Their grievance concerns the meaning of ordinances and collective bargaining agreements, and it has been understood for a long time that the due process clauses do not require hearings to resolve disputes about the meaning and effect of laws, regulations, and contracts. See, e.g., *Atkins v. Parker*, 472 U.S. 115 (1985); *Bi-Metallic Investment Co. v. State Board of Equalization*, 239 U.S. 441 (1915). This circuit has held accordingly that §1983 may not be used to determine whether some statute or contract creates a property interest in the abstract; unless the plaintiff maintains that the state actor had to offer a hearing to resolve some contested issue of fact, the dispute belongs in state court under state law. See, e.g., *Mid-American Waste Systems, Inc. v. Gary*, 49 F.3d 286 (7th Cir. 1995).

With respect to a handful of fundamental rights the due process clause has a substantive component. See *Sacramento v. Lewis*, 523 U.S. 833 (1998); *Washington v. Glucksberg*, 521 U.S. 702 (1997). Plaintiffs do not mention substantive due process, however, nor could they do so with straight faces. The timing of step increases under a civil-service system is not a "fundamental right." We know from decisions such as *Collins v. Harker Heights*, 503 U.S. 115 (1992); *Witkowski v. Milwaukee County*, 480 F.3d 511 (7th Cir. 2007); and *Walker v. Rowe*, 791 F.2d 507, 510 (7th Cir. 1986), that the due process clause does not assure the officers' personal safety. Certainly it does not dictate the frequency of their raises. Plaintiffs do not deny that federal law would allow Cook County to implement the system that the Sheriff is using; they maintain only that the Sheriff's method of determining eligibility for raises is incompatible with the County's existing ordinances and promises.

So plaintiffs lack a serious claim under the Constitution whether or not the schedule for step increases creates a "property right." Normally failure on the merits leads to judgment in defendants' favor rather than to dismissal for lack of jurisdiction. See *Bell v. Hood*, 327 U.S. 678 (1946). But some theories are such piffle that they fail even to make out claims arising under federal law, and these must be dismissed for want of jurisdiction. See, e.g., *Hagans v. Lavine*, 415 U.S. 528, 538 (1974) (no jurisdiction if "prior decisions inescapably render the claims frivolous"); *Goosby v. Osser*, 409 U.S. 512 (1973); *Bailey v. Patterson*, 369 U.S. 31 (1962); *Crowley Cutlery Co. v. United States*, 849 F.2d 273 (7th Cir. 1988).

Distinguishing between "essentially fictitious" claims (see *Bailey*, 369 U.S. at 33) that do not invoke federal jurisdiction and those in which a fairly debatable claim fails on the merits is essential if the federal courts are to remain tribunals of limited jurisdiction. Otherwise, as we have observed, all state-law claims against state actors could come to federal court, and the terms of the diversity jurisdiction would be nullified. Only state courts can ascertain the law of Cook County; all a federal court can do is make an educated guess. Claims such as the one presented here should be resolved in state court, not in federal court under the pretext that a "property right" need be established for purposes of the due process clause. Plaintiffs don't want *process*; they want money. To seek it, they must litigate in the proper forum.

The judgment of the district court is vacated, and the case is remanded with instructions to dismiss for want of subject-matter jurisdiction.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*