**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LONE STAR SECURITY & VIDEO,
INC., a California Corporation,
*Plaintiff-Appellee,*

and

FRED PARKS,

*Plaintiff,*

v.

CITY OF LOS ANGELES,
*Defendant-Appellant.*

No. 07-56521

D.C. No.
CV-03-05346-WDK

LONE STAR SECURITY & VIDEO,
INC., a California Corporation,
*Plaintiff-Appellant,*

and

FRED PARKS,

*Plaintiff,*

v.

CITY OF LOS ANGELES,
*Defendant-Appellee.*

No. 07-56575

D.C. No.
CV-03-05346-WDK

OPINION

Appeal from the United States District Court
for the Central District of California
William D. Keller, District Judge, Presiding

Argued and Submitted
May 7, 2009—Pasadena, California

Filed July 10, 2009

8591

Before: Betty B. Fletcher, Raymond C. Fisher and
Ronald M. Gould, Circuit Judges.

Opinion by Judge Fisher

## COUNSEL

Rockard J. Delgadillo, City Attorney; Laurie Rittenberg, Assistant City Attorney; and Michael D. Nagle (argued), Deputy City Attorney, Los Angeles, California, for the defendant-appellant-cross-appellee.

George M. Wallace, Wallace, Brown & Schwartz, Pasadena, California, for the plaintiff-appellee-cross-appellant.

## OPINION

FISHER, Circuit Judge:

The City of Los Angeles routinely towed vehicles owned by Lone Star Security & Video, Inc. (Lone Star) for violating an ordinance that Lone Star contends was preempted by the California Vehicle Code. Lone Star brought a claim under 42 U.S.C. § 1983, arguing that because the ordinance was invalid under state law, the City violated Lone Star's due process rights under the United States Constitution. We must decide not simply whether this claim makes out a federal constitutional violation — it does not — but whether the claim is so " 'wholly insubstantial and frivolous' " that the district court lacked jurisdiction to entertain it. *Steel Co. v. Citizens for a*

*Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)); *see* 28 U.S.C. §§ 1331, 1343. We also address whether due process required the City to provide notice to Lone Star, a chronic violator of the ordinance, each time it towed one of Lone Star's vehicles.

## BACKGROUND

The California Vehicle Code preempts municipal vehicle ordinances inconsistent with its provisions. In relevant part, the Code provides that "no local authority shall enact or enforce any ordinance on the matters covered by this code unless expressly authorized herein." Cal. Veh. Code § 21. The Code further makes it "unlawful for any peace officer or any unauthorized person to remove any unattended vehicle from a highway to a garage or to any other place, except as provided in this code." *Id.* § 22650. As an exception to this general prohibition against towing unattended vehicles, the Code provides that a municipal officer "who is engaged in directing traffic or enforcing parking laws and regulations . . . of a city" is authorized to tow a vehicle "parked or left standing upon a highway for 72 or more consecutive hours in violation of a local ordinance authorizing removal." *Id.* § 22651.

Although the Code provides for the towing of vehicles parked "for 72 or more *consecutive* hours," *id.* (emphasis added), the City of Los Angeles enacted a provision that, during the relevant period, prohibited parking in an otherwise legal public spot "for more than 72 hours *in the aggregate* during any period of 73 consecutive hours." L.A., Cal., Mun. Code § 80.73.2 (1987) (emphasis added).[1] The ordinance fur-

---

[1]Since Lone Star brought this action, Los Angeles Municipal Code § 80.73.2 ("Section 80.73.2") has been amended so that, consistent with the California Vehicle Code, it simply prohibits publicly parking "for 72 or more consecutive hours." L.A., Cal., Mun. Code § 80.73.2 (2006). Hereinafter all citations to "Los Angeles Municipal Code § 80.73.2" and "Section 80.73.2" refer to Los Angeles Municipal Code § 80.73.2 (1987).

ther stated that "a vehicle shall be deemed parked or left standing for . . . 72 hours unless during that period [it] is either driven a minimum of one mile after leaving the location where it has been parked or left standing or, within that period, is removed from any highway, street or alley." *Id.*

Lone Star, the plaintiff-cross-appellant in this action, sells security systems to homes and business. As part of its marketing strategy, Lone Star attached advertisements to a number of mobile trailers and parked them for extended periods on residential streets in Los Angeles. Over several years, officers of the Los Angeles Police Department (LAPD) and Los Angeles Department of Transportation (LADOT) towed and impounded 77 of Lone Star's trailers for having been parked longer than 72 hours in violation of Los Angeles Municipal Code § 80.73.2.

Both LAPD and LADOT officers have forms they may attach to a vehicle in order to notify its owner that the vehicle may be towed for being parked longer than 72 hours in violation of Section 80.73.2. The City's policy is that LAPD and LADOT officers should attach one of these notice forms to any vehicle belonging to a first-time offender. The decision whether to attach the form to a repeat offender's vehicle, however, is left to each individual officer's discretion. It is unclear from the record whether the City had, at some point, placed a notice on each of Lone Star's trailers that it ultimately towed and impounded. Lone Star does not dispute, however, that it received multiple notices for being parked in violation of Section 80.73.2 and that, in addition to its trailers being towed, it was issued hundreds of citations for violating the ordinance.

In April 2003, Lone Star filed an action in California state court alleging the City was in unlawful possession of Lone Star's trailers that were impounded under Los Angeles Municipal Code § 80.73.2 because the ordinance was invalid under the California Vehicle Code. In the state court action,

Lone Star sought a preliminary injunction to prevent the City from towing any of its vehicles that the City could not prove had remained parked in the same location for over 72 consecutive hours without having been moved at least a mile during that period. The Los Angeles County Superior Court denied Lone Star's preliminary injunction request, concluding that it was unlikely Lone Star could prove that the Los Angeles Municipal Code was inconsistent with the California Vehicle Code.

Lone Star voluntarily dismissed its state court action and filed the present one in federal court. In this action, Lone Star raised two claims under 42 U.S.C. § 1983, contending that its federal due process rights were violated (1) because the City provided inadequate notice before towing its vehicles, and (2) because Los Angeles Municipal Code § 80.73.2 was preempted by the California Vehicle Code and thus invalid.[2] Lone Star's complaint, however, asserts no state law causes of action.

The district court granted Lone Star summary judgment on the ground that Section 80.73.2 is invalid under the California Vehicle Code, but also held that the City was not constitutionally required to provide Lone Star notice each time it towed one of Lone Star's vehicles for violating the 72-hour rule. Following a bench trial, the district court awarded Lone Star

---

[2]Lone Star first raised its invalid-ordinance claim in its motion for summary judgment. The parties fully argued the merits of the claim, however, and the City did not object to Lone Star's failure to raise the claim in its complaint. "When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings." Fed. R. Civ. P. 15(b)(2). "Even when federal issues have been litigated," however, "the parties cannot invoke constructive amendment to escape the ordinary boundaries of federal jurisdiction." *City of Rome, N.Y. v. Verizon Commc'ns, Inc.*, 362 F.3d 168, 181-82 (2d Cir. 2004). The waiver is moot, however, in light of our conclusion that the district court lacked jurisdiction over Lone Star's invalid-ordinance claim.

damages reflecting the company's overall losses for *all* of its trailers towed under Section 80.73.2 between 2001 and 2003, irrespective of whether those trailers were in fact parked more than 72 consecutive hours — such that California Vehicle Code § 22651(k) would permit their towing — or were simply parked "for more than 72 hours in the aggregate" during a 73-hour period. L.A., Cal., Mun. Code § 80.73.2 (1987). The City timely appealed the district court's judgment, and Lone Star timely cross-appealed the district court's determination that it received constitutionally sufficient notice before its vehicles were towed.

## DISCUSSION

Lone Star purports to raise two distinct due process claims in this action. We conclude that the district court lacked subject matter jurisdiction over one of these claims, and properly rejected the other on its merits.

### I.   Invalid-Ordinance Claim

Lone Star asserts a due process claim under 42 U.S.C. § 1983 based solely on the City having towed its trailers for being parked in violation of an ordinance that, Lone Star argues, is invalid under state law (the "invalid-ordinance claim"). Specifically, Lone Star contends that Los Angeles Municipal Code § 80.73.2 was preempted by the California Vehicle Code. The City violated Lone Star's federal due process rights by enforcing Section 80.73.2, Lone Star argued in its motion for summary judgment, because "[w]hen a public authority takes property on the basis of a law that is itself unauthorized, that taking is improper and a violation of due process." The district court accepted Lone Star's claim, holding that "[t]o the extent that the City of Los Angeles or its agencies or representatives have towed or impounded" Lone Star's vehicles under Section 80.73.2, "those actions have

been unlawful and deprived plaintiffs of Constitutional rights under color of law in violation of 42 U.S.C. § 1983."[3]

The parties never presented to the district court, however, the question whether it had jurisdiction to address Lone Star's invalid-ordinance claim. Because "we have an independent obligation to examine our own and the district court's jurisdiction," *Williams v. Boeing Co.*, 517 F.3d 1120, 1127 (9th Cir. 2008) (internal quotation marks omitted), we ordered the parties to file supplemental briefs on "(1) whether Lone Star asserts a colorable federal constitutional claim in arguing that Los Angeles Municipal Code § 80.73.2 is invalid under the California Vehicle Code and (2) if not, whether the district court had subject matter jurisdiction to consider the claim." With the benefit of these submissions, we conclude that Lone Star's invalid-ordinance claim fails to raise a colorable federal question, and the district court therefore lacked subject matter jurisdiction over the claim.

---

[3]On appeal, the City argues that, regardless whether Section 80.73.2 is valid under state law, the district court's holding was erroneous because the City had a separate ordinance in place that, consistent with the California Vehicle Code, authorized LAPD and LADOT officers "to remove from highways, streets or alleys within the City of Los Angeles . . . any vehicle which has been parked . . . for 72 or more consecutive hours." L.A., Cal., Mun. Code § 80.77(a).

Although the City presented this argument to the district court before trial, it waived the argument by failing to present it in opposition to Lone Star's motion for summary judgment, and by earlier stipulating that Lone Star's trailers had been towed and impounded because they were "parked in violation of the '72 hour rule' embodied in Los Angeles Municipal Code section 80.73.2." *See USA Petroleum Co. v. Atl. Richfield Co.*, 13 F.3d 1276, 1284 (9th Cir. 1994) ("It is a general rule that a party cannot revisit theories that it raises but abandons at summary judgment."). Even if the City had preserved this argument for appeal, however, we could not reach its merits in light of our conclusion that the district court lacked jurisdiction over Lone Star's invalid-ordinance claim.

## A.   Jurisdictional Framework

**[1]** We do not lightly conclude that a § 1983 claim is so lacking that it fails to present a federal question. "To state a claim under § 1983, a plaintiff must," as Lone Star has done, "both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). Accordingly, "[a]lmost by definition, a claim under § 1983 arises under federal law . . . ." *Local Union No. 12004, United Steelworkers of Am. v. Mass.*, 377 F.3d 64, 75 (1st Cir. 2004). Our inquiry does not end here, however.

**[2]** Although a district court typically has subject matter jurisdiction over a claim "if 'the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another,' " such jurisdiction is wanting if the claim " 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction *or* where such a claim is wholly insubstantial and frivolous.' " *Steel Co.*, 523 U.S. at 89 (emphasis added) (quoting *Bell*, 327 U.S. at 682-83, 685). We must therefore address whether Lone Star's § 1983 claim is so untenable that it does not give rise to federal question jurisdiction. Dismissal for lack of jurisdiction on this basis "is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.' " *Id.* (quoting *Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 666 (1974)).

**[3]** At least two circuits have addressed whether a due process claim under § 1983 presents a federal question where the plaintiff alleges only that a municipal ordinance is invalid under state law; both have answered in the negative. *See Goros v. County of Cook*, 489 F.3d 857, 859-60 (7th Cir.

2007); *Norton v. Vill. of Corrales*, 103 F.3d 928, 930 (10th Cir. 1996). For the reasons below, we join these circuits, and hold that "when an attack on the validity of a city ordinance is limited to the claim that the ordinance violates state law[,] . . . the result of error in the administration of state law, though injury may result, is not a matter of federal judicial cognizance under the due process clause of the fourteenth amendment." *Id.* (internal quotation marks and alteration omitted).

## B.   Analysis

Due process claims under § 1983 typically involve questions of state law. *See, e.g.*, *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972) ("Property interests . . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ."). Lone Star, however, contends that its due process rights were violated *solely* by virtue of the City's acting under an ordinance that is invalid under state law. As explained below, this due process claim is so implausible that it does not support federal question jurisdiction. *See Goros*, 489 F.3d at 860 ("Distinguishing between 'essentially fictitious' claims that do not invoke federal jurisdiction and those in which a fairly debatable claim fails on the merits is essential if the federal courts are to remain tribunals of limited jurisdiction.") (citation omitted) (quoting *Bailey v. Patterson*, 369 U.S. 31, 33 (1962)).

[4] "A due process claim provides subject matter jurisdiction when it is supported by facts 'sufficient to state a violation of substantive or procedural due process.' " *Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008, 1017 (9th Cir. 2007) (quoting *Anderson v. Babbitt*, 230 F.3d 1158, 1163 (9th Cir. 2000)). Lone Star does not suggest, nor could it, that its invalid-ordinance claim is based on *substantive* due process. The ordinance Lone Star challenges does not interfere with one of the fundamental rights or liberty interests that enjoy

"heightened protection against government interference" under the substantive component of the due process clause. *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). In addition to restricting legislation that interferes with fundamental rights, substantive due process also "bar[s] certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). But this prohibition extends only to executive conduct that "amount[s] to an 'abuse of power' lacking any 'reasonable justification in the service of a legitimate governmental objective.' " *Shanks v. Dressel*, 540 F.3d 1082, 1088 (9th Cir. 2008) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). Lone Star concedes that Section 80.73.2 serves the rational purpose of "encourag[ing] removal" of any vehicle parked for more than 72 hours in a public place "from its place of repose," *Scofield v. City of Hillsborough*, 862 F.2d 759, 764 (9th Cir. 1988), and therefore cannot contest that the City advanced this purpose by enforcing the ordinance. Thus, Lone Star cannot plausibly assert a substantive due process violation.

**[5]** Nor does Lone Star make out a colorable *procedural* due process claim simply by asserting there is a defect in Section 80.73.2's state-law pedigree. "To satisfy procedural due process, a deprivation of life, liberty, or property must be 'preceded by notice and opportunity for hearing appropriate to the nature of the case.' " *In re Yochum*, 89 F.3d 661, 672 (9th Cir. 1996) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)). In its supplemental briefing, Lone Star argues that if an ordinance is invalid under state law, it necessarily fails to provide a level of notice sufficient to satisfy due process. The notice and hearing requirements of procedural due process, however, are not so rigid.

**[6]** Due process, rather than being "a technical conception with a fixed content unrelated to time, place and circumstances[,] . . . . is flexible and calls for such procedural protections as the particular situation demands." *Gilbert v. Homar*,

520 U.S. 924, 930 (1997) (internal quotation marks and citation omitted); *see also Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 610 (1974) ("Due process of law guarantees no particular form of procedure; it protects substantial rights." (internal quotation marks omitted)). Accordingly, the relevant question for due process purposes is not whether Section 80.73.2 is defective as a matter of state law, but whether the City, in implementing the ordinance, provided the level of notice required whenever the government "alter[s] substantive rights through enactment of rules of general applicability." *United States v. Locke*, 471 U.S. 84, 108 (1985). "[A] legislature generally provides" this level of notice "simply by enacting the statute, publishing it, and, to the extent the statute regulates private conduct, affording those within the statute's reach a reasonable opportunity both to familiarize themselves with the general requirements imposed and to comply with those requirements." *Id.* Lone Star does not suggest that Section 80.73.2 is deficient in one of these respects.

**[7]** Just as "§ 1983 and § 1331 in combination do not allow state-law claims to be litigated in federal court just because the defendant is a state actor and the plaintiff takes care to assert that state law creates a 'property interest,' " federal courts cannot adjudicate such claims simply because the plaintiff asserts that a duly enacted ordinance fails to provide constitutionally sufficient notice. *Goros*, 489 F.3d at 859 (emphasis omitted). Accordingly, we conclude that Lone Star's invalid-ordinance claim alleges no facts that could plausibly constitute a due process violation.

We further hold that Lone Star's invalid-ordinance argument not only lacks merit, but, as a due process claim, is "wholly insubstantial and frivolous." *Steel Co.*, 523 U.S. at 89 (internal quotation marks omitted). In a case involving federal interests far more tangible than those Lone Star has identified, we held that a plaintiff does not make out a § 1983 claim by alleging only that the government enforced a preempted state law. *See White Mountain Apache Tribe v. Williams*, 810 F.2d

844 (9th Cir. 1987). In *White Mountain*, the plaintiffs had been required to pay taxes under two Arizona statutes the United States Supreme Court later determined to be preempted by federal law, and brought § 1983 claims contending that their rights had been violated under the Supremacy and Due Process clauses of the United States Constitution. We held that the plaintiffs failed to provide a meaningful basis for evaluating their due process claim, and that "preemption of state law under the Supremacy Clause — at least if based on federal occupation of the field or conflict with federal goals — will not support an action under § 1983." *Id.* at 850. Unlike Lone Star's invalid-ordinance claim, the plaintiff's claims in *White Mountain* were grounded in federal preemption principles, and our rejection of the claims thus shows how devoid of merit Lone Star's due process argument is in this case, where the ostensible conflict is not between a state statute and federal law, but merely between a municipal ordinance and a state statute.

**[8]** In short, Lone Star's claim is premised on a notion of due process that is facially absurd. It is a tenet of our federal system that state constitutions are "not taken up into the 14th Amendment" such that federal courts may strike down a statute as invalid under state law. *Pullman Co. v. Knott*, 235 U.S. 23, 25 (1914) (Holmes, J.). It is likewise "axiomatic that 'for the purposes of the Supremacy Clause, the constitutionality of local ordinances is analyzed in the same way as that of statewide laws.' " *Wis. Pub. Intervenor v. Mortier*, 501 U.S. 597, 605 (1991) (quoting *Hilsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985)).

**[9]** Blind to both these principles, Lone Star advances a notion of due process that would "demote[ ]" the Constitution to "a font of tort law." *Lewis*, 523 U.S. at 847 n.8. This "approach to § 1983 and the federal-question jurisdiction," if accepted, would allow "*every* claim against *any* state actor [to] be litigated in federal court, no matter how small the stakes and no matter the parties' citizenships." *Goros*, 489

F.3d at 859. Accordingly, we hold that Lone Star's invalid-ordinance claim "is so insubstantial, implausible, foreclosed by prior decisions . . . [and] otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co.*, 523 U.S. at 89 (internal quotation marks omitted).

**[10]** This holding is, in some respects, a windfall to the City, which failed to argue that Lone Star could not make out a cognizable due process claim merely by asserting that Section 80.73.2 is invalid under state law. "[D]efects in our subject-matter jurisdiction," however, "go to the inherent power of the court and cannot be waived or forfeited." *United States v. Jacobo Castillo*, 496 F.3d 947, 952 (9th Cir. 2007) (en banc). Therefore, despite the City's failure to raise the jurisdictional issue, we must reverse the district court's award of summary judgment and remand with instructions to dismiss Lone Star's invalid-ordinance claim for lack of subject matter jurisdiction.

## II.   Notice Claim

In addition to its invalid-ordinance claim, Lone Star argues that beyond any lack of "statutory" notice resulting from Los Angeles Municipal Code § 80.73.2 being invalid under state law, the City failed to provide adequate notice before towing its trailers for being parked more than 72 hours. The City had a policy of providing notice to first-time offenders before towing their vehicles in violation of the 72-hour rule, but left to the discretion of individual officers the decision whether to provide pre-towing notice to repeat offenders. Lone Star concedes that the notice provided to first-time offenders was sufficient to satisfy due process, and that it received this notice on multiple occasions. It argues, however, that the City was required to provide such advance notice each time it towed one of Lone Star's trailers. Although sufficiently colorable to establish federal question jurisdiction, this due process claim fails on its merits.

**[11]** Due process "require[s] that notice generally be given *before* the government may seize property." *Clement v. City of Glendale*, 518 F.3d 1090, 1093 (9th Cir. 2008). There are, however, "numerous exceptions to this general rule: The government need not give notice in an emergency, nor if notice would defeat the entire point of the seizure, nor when the interest at stake is small relative to the burden that giving notice would impose." *Id.* at 1093-94; *see also Scofield*, 862 F.2d at 762-64 (holding that city was not required to provide advance notice before towing unregistered vehicles). In evaluating whether pre-towing notice is constitutionally required in Lone Star's situation, we are guided by the context-specific balancing test set forth in *Mathews v. Eldridge*:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. 319, 335 (1976); *see Scofield*, 862 F.2d at 762-63 (applying test). Weighing these factors, we conclude the City's notice policy did not violate Lone Star's due process rights.

**[12]** First, although "[t]he uninterrupted use of one's vehicle is a significant and substantial private interest," *Scofield*, 862 F.2d at 762, Lone Star does not assert such an interest. *See Clement*, 518 F.3d at 1094 (concluding that "the owner's normal interest in continued use of his vehicle — as a means of getting from place to place" had "no force" for the seizure at issue because the plaintiff's car had "just sat in the parking lot, unused"). Lone Star was not using its trailers for transportation, but as an advertising medium in residential neighbor-

hoods. As the district court put it, "[Lone Star] wants to be able to keep . . . the vans with these advertisements where they are for as long as [it] can get away with it." This inappropriate use creates a less substantial interest in the trailers than had they served as a principal means of transportation.

**[13]** Second, the "risk of erroneous deprivation" is not substantial. Whatever the risk may be of erroneously towing a first-time offender's vehicle for violating the 72-hour rule, this risk is considerably reduced with respect to chronic offenders such as Lone Star who demonstrate a pattern of violating the rule. *See Clement*, 518 F.3d at 1094 (concluding that there does not "appear to be a significant risk of erroneous towing" for cars not driven by their owners that are parked in violation of their non-operation certificates); *Sutton v. City of Milwaukee*, 672 F.2d 644, 646 (7th Cir. 1982) ("The determination that a car is illegally parked is pretty cut and dried. Police officers make mistakes, of course, but in giving out parking tickets not very many — far fewer than in the case of moving violations.").

**[14]** Third, "implementing parking regulations" is a valid governmental interest. *Scofield*, 862 F.2d at 763 (discussing *Sutton*, 672 F.2d at 646). "Towing not only implements these regulations directly by removing illegally parked cars, but the threat of towing also deters future transgressions." *Id.* Lone Star contends that the only purpose served by the City's 72-hour parking rule is that served by laws authorizing the towing of abandoned vehicles. We have recognized that this purpose, "removal of [a] car from its place of repose," is not hindered — indeed, it is advanced — by a policy of consistently "giving a pre-towing notice to the owner of an apparently abandoned vehicle." *Id.* at 764.

Beyond the goal of simply removing abandoned vehicles from shared public space, however, the City has identified a number of other interests reasonably related to Section 80.73.2, such as preventing vandalism and addressing public

nuisances such as those caused by Lone Star's marketing strategy of parking trailers in residential neighborhoods for extended periods. The City's policy of towing chronic offenders' vehicles without prior notice advances these interests both by removing the illegally parked vehicles and deterring recidivism. *See id.* at 763. The reasonableness of the policy is well illustrated by this case, where Lone Star's incentives for violating the 72-hour rule include not only the commercial benefits of cost-free, long-term parking in public spaces, but also the advertising exposure it enjoys by displaying its trailers in residential areas. With these incentives, if the City were required to provide advance notice each time it towed a chronic offender's vehicle, Lone Star would have a strong interest in monitoring its many trailers and moving only those on which notice has been posted, leaving the others parked until an officer happened to spot them. *See id.* ("[I]f a notice had to be given before towing an illegally parked car, this would, in effect, preclude towing of all illegally parked vehicles."). Such a requirement would leave the City incapable of using towing to deter Lone Star's conduct, and thus unable to advance the interests underlying the 72-hour rule.

**[15]** Accordingly, we conclude that "advance notice is infeasible" under the circumstances presented by this case, *id.*, and hold that due process did not require the City to provide advance notice to Lone Star, a chronic offender, before towing its trailers for violating the 72-hour rule.

## CONCLUSION

For the reasons above, we hold the City provided constitutionally sufficient notice before towing Lone Star's vehicles, and affirm the district court's rejection of this due process claim. We further hold the district court lacked subject matter jurisdiction over Lone Star's claim that Los Angeles Municipal Code § 80.73.2 is invalid under state law. Lone Star elected to bring its invalid-ordinance claim only under federal law, and thus there are no outstanding state-law claims for the

district court to address by way of supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). Because Lone Star is left without any remaining causes of action, we may not remand to the district court with instructions to permit Lone Star to amend its complaint. Accordingly, we affirm the district court's rejection of Lone Star's constitutional notice claim, vacate its grant of summary judgment on Lone Star's invalid-ordinance claim and remand with instructions to dismiss that claim for lack of jurisdiction. *See Goros*, 489 F.3d at 860.

AFFIRMED in part; VACATED in part and REMANDED with directions. The parties shall bear their own costs on appeal.