[No. B141637. Second Dist., Div. Five. Sept. 17, 2001.]

LEOPOLDO MERAZ, Plaintiff and Appellant, v.
FARMERS INSURANCE EXCHANGE, Defendant and Respondent.

322

COUNSEL

McKarus & Golden and Douglas G. McKarus for Plaintiff and Appellant.

Horvitz & Levy, Barry R. Levy, Robert H. Wright; Ropers, Majeski, Kohn & Bentley and Allan E. Anderson for Defendant and Respondent.

OPINION

ARMSTRONG, J.—Plaintiff Leopoldo Meraz appeals the entry of summary judgment in favor of defendant Farmers Insurance Exchange after the trial court determined that the bodily injury suffered by plaintiff was not covered under the insured's homeowners policy. We conclude that the policy provided coverage, and reverse.

### FACTS

In or before 1996, Armando Aviles bought a 1974 Ford Cargo van. The van was not in operating condition at the time Aviles acquired it. It was delivered to the residence of his next-door neighbor, Pedro Avella, on a flatbed truck, with an empty gas tank, no battery, no ignition key, with an expired registration, and with an engine that would not start. Aviles did not purchase the van intending to return it to operating condition. Rather, he acquired it for the sole purpose of using it as a toolshed, and that is the only use either Aviles or Avella ever made of it. The van was never driven, and was never operable, during the time that Aviles owned it.

Plaintiff was injured on December 1, 1997, when he and the insured, Avella, tried to start the van's engine by pouring gasoline down the carburetor to see if the engine could be salvaged and sold.

Respondent had issued to Avella and his wife, Ena Avella, a special form homeowners policy (hereinafter referred to as the Policy) with a $300,000 limit for personal liability and $1,000 per-person medical payments limit, for their property located at 3606 East 61st Street, Huntington Park, California.

Avella submitted a claim to respondent, which the latter rejected on the ground that the claim for bodily injury resulted from the ownership, maintenance, use, loading and unloading of motor vehicles, and was thus specifically excluded. Thereafter, appellant filed a complaint for damages against Avella. Appellant and Avella participated in a binding arbitration which found both parties to be partially at fault. On June 21, 1999, Avella assigned in writing to appellant his cause of action against respondent.

On July 2, 1999, appellant filed this lawsuit against respondent, alleging causes of action for breach of contract and breach of the implied duties of good faith and fair dealing. Respondent moved for summary judgment, arguing that the undisputed facts established that the Policy provided no coverage for appellant's injuries. The trial court agreed, and entered summary judgment. Appellant timely appealed.

## DISCUSSION

Resolution of this case depends upon the proper interpretation of the language of the Policy. We begin our review, then, with the fundamental rules of the interpretation of such policies.

■ The interpretation of an insurance policy is not dependent upon what the insurer or its attorneys intended in drafting the document. Rather, the policy is to be interpreted from the perspective of what a reasonable person in the position of the insured would have understood the words to mean. (*Montrose Chemical Corp. v. Admiral Ins. Co.* (1995) 10 Cal.4th 645, 666-667 [42 Cal.Rptr.2d 324, 913 P.2d 878].) "The policy should be read as a layman would read it and not as it might be analyzed by an attorney or an insurance expert." (*Crane v. State Farm Fire & Cas. Co.* (1971) 5 Cal.3d 112, 115 [95 Cal.Rptr. 513, 485 P.2d 1129, 48 A.L.R.3d 1089]; see also *Reserve Ins. Co. v. Pisciotta* (1982) 30 Cal.3d 800, 807 [180 Cal.Rptr. 628, 640 P.2d 764].) Ambiguities in coverage clauses are normally resolved in favor of upholding the insured's reasonable expectations. "[W]e generally interpret the coverage clauses of insurance policies broadly [in order to protect] the objectively reasonable expectations of the insured." (*Montrose Chemical Corp. v. Admiral Ins. Co., supra,* 10 Cal.4th at p. 667.) Finally, if neither the plain meaning of the words used nor the reasonable expectations of the insured resolve the ambiguity in an insurance policy, the policy will be construed against the insurer. (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1265 [10 Cal.Rptr.2d 538, 833 P.2d 545].)

Moreover, coverage exclusions and limitations are "strictly construed against the insurer and liberally interpreted in favor of the insured." (*Delgado v. Heritage Life Ins. Co.* (1984) 157 Cal.App.3d 262, 271 [203 Cal.Rptr. 672]; *Healy Tibbitts Constr. Co. v. Employers' Surplus Lines Ins. Co.* (1977) 72 Cal.App.3d 741, 749 [140 Cal.Rptr. 375, 97 A.L.R.3d 1258].) Similarly, exceptions to exclusions are construed broadly in favor of the insured. (*National Union Fire Ins. Co. v. Lynette C.* (1991) 228 Cal.App.3d 1073 [279 Cal.Rptr. 394]; see also *American Star Ins. Co. v. Insurance Co. of the West* (1991) 232 Cal.App.3d 1320, 1327 [284 Cal.Rptr. 45].) "[A]n insurer cannot escape its basic duty to insure by means of an exclusionary

clause that is unclear. . . . '[T]he burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language.' " *(State Farm Mut. Auto. Ins. Co. v. Jacober* (1973) 10 Cal.3d 193, 201-202 [110 Cal.Rptr. 1, 514 P.2d 953].)

Appellant claims coverage pursuant to the exception to the exclusion for bodily injury arising out of "the ownership, maintenance, use, loading or unloading of a motor vehicle owned or operated by the insured." The Policy defines "motor vehicle" to mean "a motorized land vehicle, including a trailer, semi-trailer or motorized bicycle, designed for travel on public road," but further provides that "a motorized land vehicle, not subject to motor vehicle registration, used only on an insured location" is not a "motor vehicle" for purposes of the Policy. Appellant maintains that, pursuant to Vehicle Code section 4000, the van was not subject to motor vehicle registration, and thus was not a "motor vehicle" for purposes of the policy.

Vehicle Code section 4000 sets forth the requirements for registration of motor vehicles, as follows: "(a)(1) No person shall drive, move, or leave standing upon a highway,[1] or in an offstreet public parking facility, any motor vehicle, trailer, semitrailer, pole or pipe dolly, or logging dolly, unless it is registered and the appropriate fees have been paid under this code, . . . . [¶] (2) For purposes of this subdivision, 'offstreet public parking facility' means either of the following: [¶] (A) Any publicly owned parking facility. [¶] (B) Any privately owned parking facility for which no fee for the privilege to park is charged and which is held open for the common public use of retail customers. [¶] (3) This subdivision does not apply to any motor vehicle stored in a privately owned offstreet parking facility by, or with the express permission of, the owner of the privately owned offstreet parking facility."

Pursuant to the foregoing Vehicle Code section, the Ford van was not required to be registered because the van was not driven, moved or left standing on a highway, and the van was stored in a privately owned offstreet parking facility with the express permission of the owner thereof. Since the van was not required to be registered, it was "not subject to motor vehicle registration."

Respondent acknowledges that Vehicle Code section 4000 "requires registration of vehicles that are used on public streets or in public parking facilities," but does not agree that the code does not require registration of vehicles that are not used on public streets or in public parking facilities. Rather, respondent contends that Vehicle Code section 4604 establishes that the van was subject to motor vehicle registration.

---

[1]The term "highway" includes a "street." (Veh. Code, § 360.)

Vehicle Code section 4604, subdivision (a) provides: "Except as otherwise provided . . . , prior to the expiration of the registration of a vehicle, if that registration is not to be renewed prior to its expiration, the owner of the vehicle shall file, under penalty of perjury, a certification that the vehicle will not be operated, moved, or left standing upon any highway without first making an application for registration of the vehicle, including full payment of all fees." Respondent argues: "The Ford cargo van was previously registered. . . . Because the van had been registered, it remained subject to registration until the filing of a certificate of non-use. . . . Although [appellant] had the burden of proving his claim fell within the exception to the exclusion . . . , he presented no evidence showing the filing of a certificate of non-use. Accordingly, the undisputed evidence shows the Ford cargo van remained subject to registration at the time of the accident."

Initially, we note that respondent misconstrues the parties' burdens on a motion for summary judgment. While at trial appellant may have the burden of proving that his claim fell within the exception to the exclusion (*Aydin Corp. v. First State Ins. Co.* (1998) 18 Cal.4th 1183, 1188 [77 Cal.Rptr.2d 537, 959 P.2d 1213]), on respondent's summary judgment motion, it was respondent's burden to negate an element of appellant's claim, establish an affirmative defense, or establish that appellant could not prove his claim. If respondent's position rested on the fact that a certificate of non-use had not been filed, it was respondent's burden on summary judgment to establish that such a certificate had never been filed. This respondent did not do.[2] Consequently, summary judgment was improperly granted.

More fundamentally, however, Vehicle Code section 4604 does not in any way modify the dictates of section 4000, which sets forth which vehicles are subject to registration. Rather, section 4604 simply provides a mechanism by which an owner of a previously registered vehicle may notify the state that the vehicle is no longer subject to registration. That procedure, including the execution of a certificate of nonoperation, documents the *fact* that a vehicle is no longer subject to registration; it is not a condition precedent to that fact. Simply put, section 4604 of the Vehicle Code has nothing to say about whether or not a vehicle is subject to registration.

Respondent also relies on two out-of-state cases (*Kimball v. New England Guar. Ins. Co.* (Me. 1994) 642 A.2d 1347 and *Laino v. Nationwide Mut. Fire Ins. Co.* (1979) 169 N.J.Super. 65 [404 A.2d 314]) to argue that the term

---

[2]Indeed, the undisputed evidence on summary judgment was that respondent could not establish this double negative, since the Department of Motor Vehicles maintained no records concerning the subject vehicle.

"subject to registration" does not mean "required to be registered" but rather means "required to be registered when used on public streets." Because it is undisputed that the van would be required to be registered if and when it were again operated on public streets, respondent argues, summary judgment was properly granted. However, the facts in the cited cases are simply not analogous to those present here: one concerned an unregistered truck "unfit for inspection" which the owner intended to use only to plow his driveway and which injured a third party when it rolled onto a public road; the other a minibike on which the insured's son was injured when riding it a quarter-mile away from the insured's property. Whether or not those vehicles were subject to registration under the laws of the states of Maine and New Jersey, respectively, can hardly establish that that interpretation is one that a reasonable person in the position of the insured would have understood the words to mean.

Finally, respondent contends that appellant's reading of the policy language must be rejected "because it would read a significant term out of the policy." The argument is stated thus: "[Appellant's] interpretation reads out of the policy the term 'not subject to motor vehicle registration' in the exception to the motor vehicle exclusion. As discussed above, that exception contains two requirements: the vehicle must be 'not subject to **motor vehicle** registration' and 'used only on an **insured location.**' Under [appellant's] interpretation of the policy, however, vehicles that are 'used only on an insured location' are never 'subject to motor vehicle registration' because they are not used on public streets. Accordingly, under his interpretation, the term 'not subject to motor vehicle registration' is superfluous. If this court were to accept [appellant's] interpretation, an insured would necessarily satisfy both elements of the exception simply by showing a vehicle is 'used only on an insured location.' Because [appellant's] interpretation reads out of the policy the phrase 'not subject to motor vehicle registration,' his interpretation must be rejected."

Contrary to respondent's argument, the requirement that the bodily injury occur on the insured's location does not render superfluous the additional requirement that the motor vehicle be "not subject to registration." Indeed, if the van's owner, Aviles, had the same homeowners insurance policy as that at issue here, appellant's claim under that policy would not be covered because the bodily injury did not occur at the insured's location. That requirement is distinct and additional to the requirement that the motor vehicle not be subject to registration.

## DISPOSITION

The judgment is reversed. Respondent to bear costs on appeal.

Turner, P. J., and Willhite, J.,* concurred.

A petition for a rehearing was denied October 5, 2001, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied January 3, 2002.

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.