# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARY CLEMENT,
        *Plaintiff-Appellant,*

v.

CITY OF GLENDALE,

        *Defendant,*

and

J&E SERVICE INC., d/b/a Monterey
Tow Service; J. YOUNG, an
individual,

        *Defendants-Appellees.*

No. 05-56692

D.C. No.
CV-02-02555-FMC

OPINION

Appeal from the United States District Court
for the Central District of California
Florence Marie Cooper, District Judge, Presiding

Argued and Submitted
July 11, 2007—Pasadena, California

Filed March 11, 2008

Before: Alex Kozinski, Chief Judge, Andrew J. Kleinfeld
and Richard C. Tallman, Circuit Judges.

Opinion by Chief Judge Kozinski

**COUNSEL**

Donald E. Chadwick, Northridge, California, for the appellant.

Michael E. Sayer and Damian J. Nassiri, Claims Legal Management, APC, Irvine, California, for the appellees.

**OPINION**

KOZINSKI, Chief Judge:

We determine the extent to which the Due Process Clause of the Fourteenth Amendment requires a state to provide notice before it may tow a vehicle parked in violation of state registration laws, if the owner has dutifully complied with an alternate form of registration.

**Facts**

Virginia Clement[1] lived in a residential hotel and parked her 1981 Cadillac Eldorado Biarritz in the hotel's parking lot. The car had not been driven in seven years and Clement did not keep the car's registration current. But she did dutifully complete an alternate form of vehicle registration, she had the hotel's permission to park there and the car was in its proper space. Without so much as a letter, a knock on the door, a note on her windshield or even a parking ticket, the Glendale police towed and impounded Clement's car. They left no clue to where it had gone. Only later did Clement discover that it had been towed for allegedly violating California vehicle registration laws.

The process started when Glendale police officer Young, on a routine patrol, noticed expired registration stickers on the car. He ran the plates and learned that Clement had filed a "planned non-operation" (PNO) certificate with the state DMV.[2] A PNO certificate allows vehicle owners to avoid paying for registration and insurance, so long as they don't drive on public roads or park in publicly accessible parking lots. Cal. Veh.

---

[1]Virginia Clement has been succeeded in this litigation by her daughter, Mary Clement.

[2]As the district court resolved the case on summary judgment, we assume Clement's version of events. *Meyers* v. *Redwood City*, 400 F.3d 765, 769-70 (9th Cir. 2005).

Code § 4000(a)(1). California law authorizes local police to tow and impound PNO vehicles found in publicly accessible parking lots, and to release the vehicle only after it has been properly registered. Cal. Veh. Code § 22651(o). Officer Young ordered Clement's car towed because he believed the car was parked in a public lot in violation of the statute.[3]

After discovering what happened to her car, Clement did the American thing: She sued. Among other claims, she brought a civil rights action under 42 U.S.C. § 1983 against Officer Young and against the company that executed the tow, claiming that they violated her constitutional right to due process by impounding her car without giving her advance notice, and that they had unconstitutionally seized her car. The district court granted summary judgment to defendants on all of her claims. In a prior appeal, we reversed the district court's grant of summary judgment on her due process claim. *Clement* v. *City of Glendale*, 132 F. App'x 147, 148 (9th Cir. 2005) (unpublished). On remand, the district court determined that Clement's constitutional right to due process required the police to try to notify her before impounding her car. The district court nevertheless granted summary judgment to Officer Young on the basis of qualified immunity and to the towing company based on a "good faith" defense. Clement appeals.

**Analysis**

**[1] 1.**   No state may "deprive any person of life, liberty, or property, without due process of law."[4] The courts have

---

[3]We need not decide whether the hotel parking lot was "publicly accessible" under the California Vehicle Code, nor whether the tow was proper under state law. We assume they were.

[4]In deciding a motion for summary judgment in a section 1983 action we are bound to look first to whether there was a constitutional violation and then to whether defendants have qualified immunity, even if the qualified immunity inquiry would resolve the case more easily. *See Saucier* v. *Katz*, 533 U.S. 194, 201 (2001); *Meyers*, 400 F.3d at 770. Some have

long interpreted this—along with the parallel restriction on the federal government in the Fifth Amendment—to require that notice generally be given *before* the government may seize property. *See Mullane* v. *Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950) ("Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case."); *see also Zinermon* v. *Burch*, 494 U.S. 113, 132 (1990) ("In situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking."); *Cleveland Bd. of Educ.* v. *Loudermill*, 470 U.S. 532, 542 (1985) ("We have described the root requirement of the Due Process Clause as being that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." (quotation marks omitted)). In other words, the government may not take property like a thief in the night; rather, it must announce its intentions and give the property owner a chance to argue against the taking.

**[2]** Of course, there are numerous exceptions to this general rule: The government need not give notice in an emergency,

questioned the logic of this "rigid 'order of battle,' " *Brosseau* v. *Haugen*, 543 U.S. 194, 201-02 (2004) (Breyer, J., concurring), but we are bound to follow it until further notice. We are free to muse, however, that the *Saucier* rule may lead to the publication of a lot of bad constitutional law that is, effectively, cert-proof. If a court of appeals holds that a constitutional right exists under *Saucier* in step one, but that the right is not clearly established (as we do in this case), then neither party will have both the incentive and the standing to petition for review of the constitutional ruling. It may be many years before another case arises that presents the same issue in a form ripe for review by the Supreme Court. *See generally* Thomas Healy, *The Rise of Unnecessary Constitutional Rulings*, 83 N.C. L. Rev. 847 (2005).

nor if notice would defeat the entire point of the seizure, nor when the interest at stake is small relative to the burden that giving notice would impose. *See, e.g.*, *Zinermon*, 494 U.S. at 132 ("[I]n situations where a predeprivation hearing is unduly burdensome in proportion to the liberty interest at stake . . . postdeprivation remedies might satisfy due process." (citation omitted)); *Mathews* v. *Eldridge*, 424 U.S. 319, 335 (1976) (weighing "the fiscal and administrative burdens that [an] additional or substitute procedural requirement would entail"). Nevertheless, the default rule is advance notice and the state must present a strong justification for departing from the norm. The case here is close. Normally, of course, removal of an automobile is a big deal, as the absence of one's vehicle can cause serious disruption of life in twenty-first century America. *See Scofield* v. *City of Hillsborough*, 862 F.2d 759, 762 (9th Cir. 1988) ("The uninterrupted use of one's vehicle [on public roads] is a significant and substantial private interest."). But Clement couldn't legally drive her car on public roads, nor does it appear that she was making off-road use of the vehicle.[5] The car just sat in the parking lot, unused. Thus the owner's normal interest in continued use of his vehicle—as a means of getting from place to place—has no force here. Nor does there appear to be a significant risk of erroneous towing.[6]

[3] However, having one's car towed, even one that's not operational, imposes significant costs and burdens on the

---

[5]An unregistered car with a PNO certificate can still be operated on private roads—such as on a farm or ranch. *See* Cal. Veh. Code § 360 ("highway" as used in registration law is limited to roads "publicly maintained and open to the use of the public"); *Meraz* v. *Farmers Ins. Exch.*, 92 Cal. App. 4th 321, 325 (Ct. App. 2001) (a vehicle kept off-street at a private residence need not be registered).

[6]The owner—as here—may contest that the car was legally parked or properly registered. These disputes are likely rare; there is no evidence before us that the DMV's registration information is consistently outdated, nor is there reason to believe that there are frequent debates over whether a given parking facility is publicly accessible or not.

car's owner. To begin with, there is no place for the police to leave notice that the car has been towed, so the owner suffers some anxiety when he discovers that the vehicle has mysteriously disappeared from its parking spot. Then, after discovering the car's new whereabouts, the owner will normally have to travel to the towing garage to retrieve it, which may involve significant cost for someone who doesn't have an operational vehicle to drive. And, of course, the garage won't release the car unless the owner pays towing, impound and storage fees.[7]

**[4]** Imposition of these burdens and costs cannot be justified as a means of deterring illegal parking. The punishment for illegal parking is a fine, which is normally imposed by affixing a ticket to the windshield. A ticket can also serve as notice of the illegality and a warning that the car will be towed if not moved or properly registered. The costs and burdens on the car owner associated with a tow can only be justified by conditions that make a tow necessary and appropriate, such as that the car is parked in the path of traffic, blocking a driveway, obstructing a fire lane or appears abandoned. A tow may also be appropriate where there are no current registration stickers and police can't be sure that the owner won't move or hide the vehicle, rather than pay the fine for illegal parking. *See Scofield*, 862 F.2d at 764 (authorizing towing in cases where the state has no current information on the whereabouts of the owner because notice in such a case could allow the owner to abscond with the vehicle); *see also Graff* v. *Nicholl*, 370 F. Supp. 974, 983 (N.D. Ill. 1974) (requiring

---

[7]The owner might also dispute the validity of the tow, in which case California law provides for a hearing within 48 hours. Cal. Veh. Code § 22852(c). If the owner is successful in his challenge, the car will presumably be released without the payment of any fees. However, we must assume that the tow was proper under state law. Our concern is whether resorting to towing in the first instance, rather than ticketing the car first, or giving the owner some other form of advance notice and an opportunity to move or register the car before it is impounded, is consistent with the requirements of due process.

notice "only to those owners whose identity may be practicably ascertained"). In such situations the tow provides security for the payment of the fine—a sort of in rem arrest and bail procedure.

**[5]** None of these circumstances are present here. As best the record reflects, the car was not blocking anyone's path and the owner of the parking lot—the hotel where Clement was staying—had given its consent. Nor was this a situation where the owner might conceal the car instead of paying the ticket: As Officer Young knew, Clement had a valid PNO certificate, which meant the DMV had a current address for her. And, as Officer Young could have figured out, had he bothered to make the effort, the address where the vehicle was registered was the very hotel in whose parking lot the car was parked. The chances that the car owner would abscond without paying any ticket the officer left on the windshield were very small indeed.[8]

The officer had several options open to him in these circumstances. He could have gone to the front desk of the hotel, asked to see the owner of the Eldorado Biarritz and told her personally that she needed to register the car or move it. This is what one might have expected from a conscientious public servant confronted with a car parked at the owner's dwelling. Short of that, the officer might have written a ticket and left it at the front desk of the hotel, with a verbal warning that the car had to be moved or registered—which the hotel clerk could have been expected to deliver with the ticket. Or, the officer could simply have written a ticket and left it on the windshield.[9]

---

[8]California law calls for a fine of not more than $250 for parking an unregistered vehicle in a public lot. Cal. Veh. Code § 42001.8. It would have been a simple task to mail a citation to the address on Clement's PNO certificate if she hid the vehicle instead of paying the fine.

[9]We do not prescribe a particular procedure for giving notice; it is up to the government to develop a policy that will result in sufficient notice

**[6]** Had Officer Young followed any of these alternative courses of action, he might then have had to return to the property a few days later to determine whether the car had been moved or registered. But this doesn't seem like a very significant burden for an officer whose job it is, after all, to patrol the neighborhood looking for ways to protect and serve the public. In short, we see very little by way of a legitimate government interest in ordering a tow of the vehicle in the first instance, rather than giving the owner notice and an opportunity to avoid the cost and hassle of having to deal with a towed vehicle. Thus, we hold that the government must attempt to notify the owner of a vehicle parked in violation of a valid PNO certificate before the government may tow and impound it.

Our holding today dovetails with *Scofield*, where we held that there was a due process requirement that notice be given —usually in the form of a ticket placed on the windshield— before police could tow apparently abandoned vehicles that are otherwise legally parked. *Scofield*, 862 F.2d at 764. We reasoned that giving notice would be a minor inconvenience for the police in the case of an abandoned vehicle, and might even advance the state's goal of removing abandoned vehicles from public places, as an abandoned vehicle may be removed by its owner after being ticketed. *Id.* Similarly, leaving notice on an unregistered vehicle is a relatively light burden that is consistent with the state's interest in encouraging removal of unregistered vehicles from public places.

Officer Young could have avoided years of litigation and needless hassle for himself, the Glendale Police Department,

being given to car owners before impoundment. *See Morrissey* v. *Brewer*, 408 U.S. 471, 481 (1972) ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands."); *Cafeteria & Rest. Workers Union* v. *McElroy*, 367 U.S. 886, 895 (1961) ("Due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." (quotation marks omitted)).

the towing company, the courts, Ms. Clement and her daughter, by simply erring on the side of caution and good public service by letting her know that her vehicle was illegally parked. Instead, the rush to tow led to this protracted litigation that, no doubt, has consumed far more city resources than it would have taken to properly notify Clement.

**[7] 2.** Officer Young asserts qualified immunity as a defense to liability. *See Wyatt* v. *Cole*, 504 U.S. 158, 167 (1992); *Harlow* v. *Fitzgerald*, 457 U.S. 800, 819 (1982); *Jensen* v. *Lane County*, 222 F.3d 570, 576 (9th Cir. 2000). Government officials performing discretionary functions "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818.

**[8]** Officer Young did not violate Clement's clearly established right by calling for her car to be towed. The constitutional requirement at issue—that pre-towing notice be given before a car with a valid PNO certificate may be removed from a parking lot matching the owner's address—was not clearly established at the time of Officer Young's actions. Neither the text of the Constitution nor our caselaw clearly spoke to the balance between the rights of citizens to pre-deprivation notice and the authority of police to enforce registration statutes. While due process generally requires notice before the government may deprive a citizen of his property, *see* pp. 2352-54 *supra*, our caselaw recognizes many exceptions. *See id.*; *Hudson* v. *Palmer*, 468 U.S. 517, 533 (1984); *Parratt* v. *Taylor*, 451 U.S. 527, 541 (1981), *overruled on other grounds by Daniels* v. *Williams*, 474 U.S. 327, 328 (1986). We have never held that municipalities must always notify vehicle owners before towing. In fact, our most recent decision involving municipal towing of unregistered vehicles —admittedly in a different context—found there to be *no* right to pre-deprivation notice. *Scofield*, 862 F.2d at 764. It would not have been unreasonable for Officer Young to have

interpreted this caselaw as not requiring that notice be given before towing an unregistered vehicle with a valid PNO certificate. We affirm the district court's grant of summary judgment in favor of defendant Young.

**[9] 3.** Monterey Tow Service, the private towing company that actually towed Clement's vehicle, may not assert qualified immunity because that defense is generally not available to private defendants in section 1983 lawsuits. *See Wyatt*, 504 U.S. at 168. However, the courts have previously held open the possibility that private defendants may assert a "good faith" defense to a section 1983 claim. *See, e.g.*, *Richardson* v. *McKnight*, 521 U.S. 399, 413-14 (1997); *Wyatt*, 504 U.S. at 169; *Jensen*, 222 F.3d at 580 n.5.

**[10]** The facts of this case justify allowing Monterey Tow Service to assert such a good faith defense. The company did its best to follow the law and had no reason to suspect that there would be a constitutional challenge to its actions. The tow was authorized by the police department, conducted under close police supervision and appeared to be permissible under both local ordinance and state law. The constitutional defect—a lack of notice to the car's owner—could not have been observed by the towing company at the time when the tow was conducted; there would be no easy way for a private towing company to know whether the owner had been notified or not. Nor would the towing company be aware of the other facts and circumstances that would be relevant in determining whether giving notice was constitutionally required. The responsibility to give notice falls on the police, thus the constitutional violation arose from the inactions of the police rather than from any act or omission by the towing company. Having acted on instructions from the Glendale Police Department that specifically called for the tow, Monterey Tow Service is entitled to invoke the good faith defense.

Monterey Tow Service did not waive its good faith defense. It asserted—in both its answer and motion for summary

judgment—that its employees were acting under the apparently lawful direction and authority of the city and officer. This was sufficient to put plaintiffs on notice that Monterey Tow Service intended to raise a good faith defense. As there is no disputed question of material fact underlying the defense, we affirm the district court's grant of summary judgment to Monterey Tow Service.

**[11] 4.** Clement's seizure claim should not be reinstated. Our recent decision in *Miranda* v. *City of Cornelius*, 429 F.3d 858, 865 (9th Cir. 2005), held that the government has the power to seize vehicles if "the driver is unable to remove the vehicle from a public location without continuing its illegal operation." It does not contradict or overrule *Scofield*.

**AFFIRMED.**