**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LONE STAR SECURITY & VIDEO,
INC., a California Corporation,
                    *Plaintiff-Appellee,*

            and

FRED PARKS,
                            *Plaintiff,*

            v.

CITY OF LOS ANGELES,
            *Defendant-Appellant.*

No. 07-56521

D.C. No.
CV-03-05346-WDK

LONE STAR SECURITY & VIDEO,
INC., a California Corporation,
                    *Plaintiff-Appellant,*

            and

FRED PARKS,
                            *Plaintiff,*

            v.

CITY OF LOS ANGELES,
            *Defendant-Appellee.*

No. 07-56575

D.C. No.
CV-03-05346-WDK

ORDER FOR
PUBLICATION
WITHDRAWING
OPINION AND
OPINION

Appeal from the United States District Court
for the Central District of California
William D. Keller, District Judge, Presiding

Argued and Submitted
May 7, 2009—Pasadena, California

Order and Opinion Filed October 21, 2009

14741

Before: Betty B. Fletcher, Raymond C. Fisher and
Ronald M. Gould, Circuit Judges.

Opinion by Judge Fisher

**COUNSEL**

Rockard J. Delgadillo, City Attorney; Laurie Rittenberg, Assistant City Attorney; and Michael D. Nagle (argued), Deputy City Attorney, Los Angeles, California, for the defendant-appellant-cross-appellee.

George M. Wallace, Wallace, Brown & Schwartz, Pasadena, California, for the plaintiff-appellee-cross-appellant.

**ORDER**

The opinion filed July 10, 2009, and appearing at 572 F.3d 685 (9th Cir. 2009), is withdrawn. A superseding opinion will

be filed concurrently with this order. Further petitions for rehearing or petitions for rehearing en banc may be filed. Appellee/Cross-Appellant's petition for rehearing and petition for rehearing en banc, filed July 24, 2009, is denied as moot.

## OPINION

FISHER, Circuit Judge:

The City of Los Angeles routinely towed vehicles owned by Lone Star Security & Video, Inc. (Lone Star) for violating an ordinance that Lone Star contends was preempted by the California Vehicle Code. Lone Star brought a claim under 42 U.S.C. § 1983, arguing that because the ordinance was invalid under state law, the City violated Lone Star's due process rights under the United States Constitution. We must decide whether this claim makes out a federal constitutional violation. We also address whether due process required the City to provide notice to Lone Star, a chronic violator of the ordinance, each time it towed one of Lone Star's vehicles.

## BACKGROUND

The California Vehicle Code preempts municipal vehicle ordinances inconsistent with its provisions. In relevant part, the Code provides that "no local authority shall enact or enforce any ordinance on the matters covered by this code unless expressly authorized herein." Cal. Veh. Code § 21. The Code further makes it "unlawful for any peace officer or any unauthorized person to remove any unattended vehicle from a highway to a garage or to any other place, except as provided in this code." *Id.* § 22650. As an exception to this general prohibition against towing unattended vehicles, the Code provides that a municipal officer "who is engaged in directing traffic or enforcing parking laws and regulations . . . of a city" is authorized to tow a vehicle "parked or left standing upon

a highway for 72 or more consecutive hours in violation of a local ordinance authorizing removal." *Id.* § 22651.

Although the Code provides for the towing of vehicles parked "for 72 or more *consecutive* hours," *id.* (emphasis added), the City of Los Angeles enacted a provision that, during the relevant period, prohibited parking in an otherwise legal public spot "for more than 72 hours *in the aggregate* during any period of 73 consecutive hours." L.A., Cal., Mun. Code § 80.73.2 (1987) (emphasis added).[1] The ordinance further stated that "a vehicle shall be deemed parked or left standing for . . . 72 hours unless during that period [it] is either driven a minimum of one mile after leaving the location where it has been parked or left standing or, within that period, is removed from any highway, street or alley." *Id.*

Lone Star, the plaintiff-cross-appellant in this action, sells security systems to homes and business. As part of its marketing strategy, Lone Star attached advertisements to a number of mobile trailers and parked them for extended periods on residential streets in Los Angeles. Over several years, officers of the Los Angeles Police Department (LAPD) and Los Angeles Department of Transportation (LADOT) towed and impounded 77 of Lone Star's trailers for having been parked longer than 72 hours in violation of Los Angeles Municipal Code § 80.73.2.

Both LAPD and LADOT officers have forms they may attach to a vehicle in order to notify its owner that the vehicle may be towed for being parked longer than 72 hours in violation of Section 80.73.2. The City's policy is that LAPD and

---

[1]Since Lone Star brought this action, Los Angeles Municipal Code § 80.73.2 ("Section 80.73.2") has been amended so that, consistent with the California Vehicle Code, it simply prohibits publicly parking "for 72 or more consecutive hours." L.A., Cal., Mun. Code § 80.73.2 (2006). Hereinafter all citations to "Los Angeles Municipal Code § 80.73.2" and "Section 80.73.2" refer to Los Angeles Municipal Code § 80.73.2 (1987).

LADOT officers should attach one of these notice forms to any vehicle belonging to a first-time offender. The decision whether to attach the form to a repeat offender's vehicle, however, is left to each individual officer's discretion. It is unclear from the record whether the City had, at some point, placed a notice on each of Lone Star's trailers that it ultimately towed and impounded. Lone Star does not dispute, however, that it received multiple notices for being parked in violation of Section 80.73.2 and that, in addition to its trailers being towed, it was issued hundreds of citations for violating the ordinance.

In April 2003, Lone Star filed an action in California state court alleging the City was in unlawful possession of Lone Star's trailers that were impounded under Los Angeles Municipal Code § 80.73.2 because the ordinance was invalid under the California Vehicle Code. In the state court action, Lone Star sought a preliminary injunction to prevent the City from towing any of its vehicles that the City could not prove had remained parked in the same location for over 72 consecutive hours without having been moved at least a mile during that period. The Los Angeles County Superior Court denied Lone Star's preliminary injunction request, concluding that it was unlikely Lone Star could prove that the Los Angeles Municipal Code was inconsistent with the California Vehicle Code.

Lone Star voluntarily dismissed its state court action and filed the present one in federal court. In this action, Lone Star raised two claims under 42 U.S.C. § 1983, contending that its federal due process rights were violated (1) because the City provided inadequate notice before towing its vehicles, and (2) because Los Angeles Municipal Code § 80.73.2 was preempted by the California Vehicle Code and thus invalid.[2]

---

[2]Lone Star first raised its invalid-ordinance claim in its motion for summary judgment. The parties fully argued the merits of the claim, however, and the City did not object to Lone Star's failure to raise the claim in its

Lone Star's complaint, however, asserts no state law causes of action.

The district court granted Lone Star summary judgment on the ground that Section 80.73.2 is invalid under the California Vehicle Code, but also held that the City was not constitutionally required to provide Lone Star notice each time it towed one of Lone Star's vehicles for violating the 72-hour rule. Following a bench trial, the district court awarded Lone Star damages reflecting the company's overall losses for *all* of its trailers towed under Section 80.73.2 between 2001 and 2003, irrespective of whether those trailers were in fact parked more than 72 consecutive hours — such that California Vehicle Code § 22651(k) would permit their towing — or were simply parked "for more than 72 hours in the aggregate" during a 73-hour period. L.A., Cal., Mun. Code § 80.73.2 (1987). The City timely appealed the district court's judgment, and Lone Star timely cross-appealed the district court's determination that it received constitutionally sufficient notice before its vehicles were towed.

## DISCUSSION

Lone Star purports to raise two distinct due process claims in this action. We conclude that the district court should have rejected the invalid-ordinance claim and properly rejected the notice claim.

---

complaint. "When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings." Fed. R. Civ. P. 15(b)(2). "Even when federal issues have been litigated," however, "the parties cannot invoke constructive amendment to escape the ordinary boundaries of federal jurisdiction." *City of Rome, N.Y. v. Verizon Commc'ns, Inc.*, 362 F.3d 168, 181-82 (2d Cir. 2004).

## I.  Invalid-Ordinance Claim

Lone Star asserts a due process claim under 42 U.S.C. § 1983 based solely on the City having towed its trailers for being parked in violation of an ordinance that, Lone Star argues, is invalid under state law (the "invalid-ordinance claim"). Specifically, Lone Star contends that Los Angeles Municipal Code § 80.73.2 was preempted by the California Vehicle Code. The City violated Lone Star's federal due process rights by enforcing Section 80.73.2, Lone Star argued in its motion for summary judgment, because "[w]hen a public authority takes property on the basis of a law that is itself unauthorized, that taking is improper and a violation of due process." The district court accepted Lone Star's claim, holding that "[t]o the extent that the City of Los Angeles or its agencies or representatives have towed or impounded" Lone Star's vehicles under Section 80.73.2, "those actions have been unlawful and deprived plaintiffs of Constitutional rights under color of law in violation of 42 U.S.C. § 1983."[3]

[1] Lone Star contends that its due process rights were violated *solely* by virtue of the City's acting under an ordinance that is invalid under state law. We conclude that this claim fails as a matter of law. Lone Star does not suggest, nor could it, that its invalid-ordinance claim is based on *substantive* due process. The ordinance Lone Star challenges does not interfere with one of the fundamental rights or liberty interests that enjoy "heightened protection against government interference" under the substantive component of the due process

---

[3]On appeal, the City argues that, regardless whether Section 80.73.2 is valid under state law, the district court's holding was erroneous because the City had a separate ordinance in place that, consistent with the California Vehicle Code, authorized LAPD and LADOT officers "to remove from highways, streets or alleys within the City of Los Angeles . . . any vehicle which has been parked . . . for 72 or more consecutive hours." L.A., Cal., Mun. Code § 80.77(a). Because we conclude that Lone Star's invalid-ordinance claim fails as a matter of law on another basis, we need not consider the City's argument, or whether the City has waived this argument.

clause. *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). In addition to restricting legislation that interferes with fundamental rights, substantive due process also "bar[s] certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). But this prohibition extends only to executive conduct that "amount[s] to an 'abuse of power' lacking any 'reasonable justification in the service of a legitimate governmental objective.' " *Shanks v. Dressel*, 540 F.3d 1082, 1088 (9th Cir. 2008) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). Lone Star concedes that Section 80.73.2 serves the rational purpose of "encourag[ing] removal" of any vehicle parked for more than 72 hours in a public place "from its place of repose," *Scofield v. City of Hillsborough*, 862 F.2d 759, 764 (9th Cir. 1988), and therefore cannot contest that the City advanced this purpose by enforcing the ordinance. Thus, Lone Star cannot plausibly assert a substantive due process violation.

**[2]** Nor does Lone Star make out a colorable *procedural* due process claim simply by asserting that Section 80.73.2's contravenes state law. "To satisfy procedural due process, a deprivation of life, liberty, or property must be 'preceded by notice and opportunity for hearing appropriate to the nature of the case.' " *In re Yochum*, 89 F.3d 661, 672 (9th Cir. 1996) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)). Lone Star argues that if an ordinance is invalid under state law, it necessarily fails to provide a level of notice sufficient to satisfy due process. The notice and hearing requirements of procedural due process, however, are not so rigid.

**[3]** Due process, rather than being "a technical conception with a fixed content unrelated to time, place and circumstances[,] . . . . is flexible and calls for such procedural protections as the particular situation demands." *Gilbert v. Homar*, 520 U.S. 924, 930 (1997) (internal quotation marks and citation omitted); *see also Mitchell v. W.T. Grant Co.*, 416 U.S.

600, 610 (1974) ("Due process of law guarantees no particular form of procedure; it protects substantial rights." (internal quotation marks omitted)). Accordingly, the relevant question for due process purposes is not whether Section 80.73.2 is defective as a matter of state law, but whether the City, in implementing the ordinance, provided the level of notice required whenever the government "alter[s] substantive rights through enactment of rules of general applicability." *United States v. Locke*, 471 U.S. 84, 108 (1985). "[A] legislature generally provides" this level of notice "simply by enacting the statute, publishing it, and, to the extent the statute regulates private conduct, affording those within the statute's reach a reasonable opportunity both to familiarize themselves with the general requirements imposed and to comply with those requirements." *Id.* Lone Star does not suggest that Section 80.73.2 is deficient in one of these respects. Accordingly, we conclude that Lone Star's invalid-ordinance claim alleges no facts that could plausibly constitute a due process violation.

In a case involving federal interests far more tangible than those Lone Star has identified, we held that a plaintiff does not make out a § 1983 claim by alleging only that the government enforced a preempted state law. *See White Mountain Apache Tribe v. Williams*, 810 F.2d 844 (9th Cir. 1987). In *White Mountain*, the plaintiffs had been required to pay taxes under two Arizona statutes the United States Supreme Court later determined to be preempted by federal law, and brought § 1983 claims contending that their rights had been violated under the Supremacy and Due Process clauses of the United States Constitution. We held that the plaintiffs failed to provide a meaningful basis for evaluating their due process claim, and that "preemption of state law under the Supremacy Clause — at least if based on federal occupation of the field or conflict with federal goals — will not support an action under § 1983." *Id.* at 850. Unlike Lone Star's invalid-ordinance claim, the plaintiff's claims in *White Mountain* were grounded in federal preemption principles, and our rejection of the claims thus shows how devoid of merit Lone

Star's due process argument is in this case, where the ostensible conflict is not between a state statute and federal law, but merely between a municipal ordinance and a state statute.

**[4]** In short, Lone Star's claim is premised on an untenable notion of due process. It is a tenet of our federal system that state constitutions are "not taken up into the 14th Amendment" such that federal courts may strike down a statute as invalid under state law. *Pullman Co. v. Knott*, 235 U.S. 23, 25 (1914) (Holmes, J.). It is likewise "axiomatic that 'for the purposes of the Supremacy Clause, the constitutionality of local ordinances is analyzed in the same way as that of statewide laws.' " *Wis. Pub. Intervenor v. Mortier*, 501 U.S. 597, 605 (1991) (quoting *Hilsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985)). Therefore, we reverse the district court's grant of summary judgment on Lone Star's invalid-ordinance claim and instruct the district court to enter summary judgment on this claim in favor of the City.

## II.   Notice Claim

In addition to its invalid-ordinance claim, Lone Star argues that the City failed to provide adequate notice before towing its trailers for being parked more than 72 hours. The City had a policy of providing notice to first-time offenders before towing their vehicles in violation of the 72-hour rule, but left to the discretion of individual officers the decision whether to provide pre-towing notice to repeat offenders. Lone Star concedes that the notice provided to first-time offenders was sufficient to satisfy due process, and that it received this notice on multiple occasions. It argues, however, that the City was required to provide such advance notice each time it towed one of Lone Star's trailers. We disagree.

**[5]** Due process "require[s] that notice generally be given *before* the government may seize property." *Clement v. City of Glendale*, 518 F.3d 1090, 1093 (9th Cir. 2008). There are, however, "numerous exceptions to this general rule: The gov-

ernment need not give notice in an emergency, nor if notice would defeat the entire point of the seizure, nor when the interest at stake is small relative to the burden that giving notice would impose." *Id.* at 1093-94; *see also Scofield*, 862 F.2d at 762-64 (holding that city was not required to provide advance notice before towing unregistered vehicles). In evaluating whether pre-towing notice is constitutionally required in Lone Star's situation, we are guided by the context-specific balancing test set forth in *Mathews v. Eldridge*:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. 319, 335 (1976); *see Scofield*, 862 F.2d at 762-64 (applying test). In *Clement*, we explained that the government must present a "strong justification" for departing from the norm that the government must generally provide notice before towing a vehicle. 518 F.3d at 1094. *Clement* concerned a noncommercial vehicle owner — a first-time offender whose car the government towed without any notice at all. We observed that towing without notice under such circumstances, as in most circumstances, "imposes significant costs and burdens on the car's owner," including the anxiety of discovering one's car missing without knowing where it has gone and the time and expense incurred in recovering possession of a vehicle that has been towed. *Id.* We held that imposition of these burdens of towing, without notice, "cannot be justified as a means of deterring illegal parking. . . . The costs and burdens on the car owner associated with a tow can only be justified by conditions that make a tow necessary and appropriate." *Id.* Weighing these considerations, we conclude

the City's notice policy did not violate Lone Star's due process rights.

**[6]** First, although "[t]he uninterrupted use of one's vehicle is a significant and substantial private interest," *Scofield*, 862 F.2d at 762, Lone Star does not assert such an interest. *See Clement*, 518 F.3d at 1094 (concluding that "the owner's normal interest in continued use of his vehicle — as a means of getting from place to place" — had "no force" for the seizure at issue because the plaintiff's car had "just sat in the parking lot, unused"). Lone Star was not using its trailers for transportation, but as an advertising medium in residential neighborhoods. Such a use creates a lesser interest in the trailers than had they served as a means of transportation. In addition, because of Lone Star's unique status as a commercial, chronic offender having general notice through repeated previous individual notices that its trailers are subject to towing, the additional costs and burdens that concerned us in *Clement* are not present here. Lone Star suffers no "anxiety" when it discovers one of its trailers has disappeared from its parking place. When a trailer disappears, Lone Star knows that it has been towed. Nor are Lone Star's costs of reacquiring possession of impounded trailers of concern. Lone Star, despite knowing its trailers are subject to towing without individualized notice, nonetheless continues to violate the ban on parking more than 72-hours. Were violating the ordinance unprofitable, we presume that Lone Star would stop violating it. As the district court found:

> Lone Star . . . already is on notice. The whole point of this litigation is that it's been ticketed or towed many times . . . . They know exactly what the regulation requires and what the rights are and what their requirements are . . . . [Lone Star] wants to be able to keep . . . the vans with these advertisements where they are for as long as [they] can get away with it. And to the extent that it exceeds 72 consecutive hours, [they know] that it's illegal . . . .

**[7]** Second, the "risk of an erroneous deprivation" is not substantial. Whatever the risk may be of erroneously towing a first-time offender's vehicle for violating the 72-hour rule, this risk is considerably reduced for a chronic offender such as Lone Star who demonstrates a pattern of violating the rule. *See Clement*, 518 F.3d at 1094 (concluding that there does not "appear to be a significant risk of erroneous towing" for cars not driven by their owners that are parked in violation of their non-operation certificates); *Sutton v. City of Milwaukee*, 672 F.2d 644, 646 (7th Cir. 1982) ("The determination that a car is illegally parked is pretty cut and dried. Police officers make mistakes, of course, but in giving out parking tickets not very many — far fewer than in the case of moving violations.").

**[8]** Third, the City has identified a number of interests served by its actions, including preventing vandalism, addressing the public nuisances caused by Lone Star's marketing strategy of parking trailers in residential neighborhoods for extended periods and deterring repeat offenders. Lone Star's incentives for violating the 72-hour rule include not only the commercial benefits of cost-free, long-term parking in public spaces, but also the advertising exposure it enjoys by displaying its trailers in residential areas. Given these incentives, were the City required to provide advance notice each time it towed one of Lone Star's trailers, Lone Star would have a strong interest in monitoring its many trailers and moving only those on which notice has been posted, leaving the others parked until an officer happened to spot them. Allowing Lone Star to game the system this way would obviously impose a significant burden on the City's interests in enforcing the 72-hour rule.

**[9]** In sum, the City's interests in preventing vandalism, abating a nuisance and deterring Lone Star's practices outweigh Lone Star's uniquely low interest in additional, individualized notices. The towings here were "necessary and appropriate" and thus did not violate Lone Star's due process rights. *Clement*, 518 F.3d at 1094.

## CONCLUSION

We affirm the district court's rejection of Lone Star's constitutional notice claim, reverse its grant of summary judgment on Lone Star's invalid-ordinance claim and remand. In its petition for rehearing, Lone Star argues that it has preserved other claims that it should be permitted to raise on remand. We express no opinion on that question and leave it to the district court to determine whether further proceedings are warranted.

**AFFIRMED in part, REVERSED in part and REMANDED.**

Each party shall bear its own costs of appeal.