**SUPERIOR COURT**
OF THE
**STATE OF DELAWARE**

MEGHAN A. ADAMS
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
(302) 255-0634

June 2, 2025

TO: COUNSEL OF RECORD

    **RE:** *Mattel, Inc. v. XL Insurance America, Inc., et al.*
        **C.A. No.: N23C-01-042 MAA CCLD**

Dear Counsel, [1]

In its previous Memorandum Opinion (the "Prior Opinion") regarding the Parties' cross-motions for summary judgment, the Court designated certain issues as reserved for later decision.[2] The Parties have met and conferred regarding the Prior Opinion.[3] The Court now resolves the reserved issues.

**A. The Corridor Retention Endorsements**

The Corridor Retention Endorsements were discussed in the Facts section of the Prior Opinion.[4] Under the terms of the Umbrella Policies' Corridor Retention Endorsements, Mattel must pay $2,000,000 *per occurrence* before an individual

---

[1] The Court incorporates by reference the entirety of the Prior Opinion, including the defined terms and short-form citations contained therein. *Mattel, Inc. v. XL Ins. Am., Inc.*, 2025 WL 948008 (Del. Super. Mar. 28, 2025) (D.I. 714) ["Prior Opinion"].
[2] *Id*. at *12.
[3] Letter to The Honorable Meghan A. Adams from Jennifer C. Wasson Regarding Unresolved Issues, at 1 (D.I. 728).
[4] Prior Opinion at *2.

Umbrella Policy will respond.[5]  In the Prior Opinion, the Court held that all of the RNPS Claims constitute a single occurrence under the terms of the Policies.[6] Because a Corridor Retention applies per occurrence,[7] Mattel is responsible for one single Corridor Retention amount ($2,000,000) that applies to every Policy.

The Chubb Umbrella Policies are silent on whether defense costs may erode a Corridor Retention amount.  Some evidence indicates the Parties intended to exclude defense costs from eroding a Corridor Retention.[8]  This Court makes no determination on whether defense costs may erode the Chubb Umbrella Policies' Corridor Retention Endorsements on summary judgment, instead leaving the issue for factual resolution at trial.[9]

## B. The National Union OAE and PCOH Endorsement

National Union argues its 2011 Umbrella Policy follows form to the underlying Primary Policy, adopting the Deemer Clause in the 2011 LBC.[10] National Union directs the Court to the 2011 Umbrella Policy's PCOH Endorsement, which

---

[5] *Id*. (emphasis added).

[6] *Id*. at *8.

[7] *See*, *e.g.*, JPA Ex. 19 at ACE-RNP00000886 (D.I. 537).

[8] Chubb's Omnibus Answering Br. in Opp'n. to Mattel's and Great American's Mots. for Partial Summ. J. ["Chubb Answering"] Ex. PPP at MARSH-MAT-0001112 (D.I. 620).

[9] *See*, *e.g.*, *Capano v. Lockwood*, 2013 WL 2724634, at *2 (Del. Super. May 31, 2013) ("Therefore, summary judgment will not be granted if it appears that there is a material fact in dispute or that further inquiry into the facts would be appropriate." (citation omitted)).

[10] National Union MSJ at 25, 35.

provides that coverage for liability arising out of the PCOH applies only if the underlying 2011 Primary Policy covers PCOH claims, and that:

> Coverage under this policy for such liability will follow the terms, definitions, conditions and exclusions of Scheduled Underlying Insurance, subject to the Policy Period, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by Scheduled Underlying Insurance.[11]

National Union contends its 2011 Umbrella Policy adopts the LBC, including the Deemer Clause, pursuant to this PCOH Endorsement.[12] National Union's 2011 Umbrella Policy also contains an OAE, which lacks a Deemer Clause, just like the OAE in the Chubb Policies.[13]

Mattel argues the presence of the OAE in National Union's Policy defeats National Union's argument. Mattel contends reading the PCOH Endorsement as adopting the LBC renders the OAE meaningless.[14] Because the PCOH Endorsement provides that PCOH coverage is "subject to the…terms…of [the 2011 National Union Umbrella Policy]," Mattel argues the OAE supplants any adopted LBC

---

[11] JPA Ex. 17 at NATIONALUNION_0001915.
[12] National Union MSJ at 35.
[13] JPA Ex 17 at NATIONALUNION_0001921
[14] Mattel's Opp. to National Union's Mot. for Summ. J. ["Mattel Resp. to National Union"] at 16 (D.I. 617).

3

language.[15]  Great American contends that there is at least a genuine issue of material fact on whether National Union's 2011 Umbrella Policy adopts the LBC.[16]

National Union counters that the PCOH Endorsement adopts the LBC without rendering the OAE superfluous.[17]  National Union first argues the OAE and PCOH Endorsement are consistent, and that the OAE batches claims into a single "occurrence" while the PCOH Endorsement deems them to a particular year.[18]  The Court is not persuaded.  If the PCOH Endorsement adopts the LBC in full, then the adopted LBC serves as both a batching clause and a Deemer Clause, and the OAE is unnecessary.

National Union also notes slight language differences between the LBC batching provision, which requires claims to be "substantially the same," and the OAE batching provision, which requires claims to be "the same."[19]  National Union further explains that, if the language of the two batching clauses is held to conflict, the OAE will trump the LBC with respect to batching, but the LBC's Deemer Clause will still be adopted by the PCOH Endorsement.[20]

---

[15] *Id*. at 17.

[16] Great American's Br. in Opp. to National Union's Mot. for Summ. J. ["Great American Resp. to National Union"] at 4 (D.I. 623).

[17] National Union's Omnibus Reply Br. in Supp. of Mot. for Summ. J. ["National Union Reply"] at 15 (D.I. 641).

[18] *Id*. at 15-16.

[19] *Id*. at 16, fn. 4.

[20] *Id*. at 16.

The OAE batches together claims arising out of "two (2) or more discrete units of the same or substantially similar [product]" where the claims arise out of "the same" issue with the product.[21] The LBC batches together claims arising out of one "lot" of products – meaning "(2) or more discrete units of the same or substantially similar good or product" – where the claims arise out of "substantially the same" issue with the product.[22] These batching provisions contain functionally identical language.

National Union points to contracts caselaw confirming California courts can consider contexts outside of the instant case in determining whether a provision is superfluous.[23] National Union first argues that, because the OAE contains a separate paragraph unrelated to batching, it is not superfluous.[24] The existence of a separate, unique paragraph in the OAE has no bearing on whether the OAE's batching clause is superfluous.

National Union next argues that the OAE is not superfluous, even if the LBC is incorporated into the National Union 2011 Umbrella Policy, because the Primary

---

[21] JPA Ex. 17 at NATIONALUNION_0001921.
[22] JPA Ex. 3 at ACE-RNP00015240.
[23] *See Aerojet-Gen. Corp. v. Com. Union Ins. Co.*, 155 Cal. App. 4th 132, 145 (2007) (considering a hypothetical scenario in determining whether an insurance policy provision was superfluous); *Meraz v. Farmers Ins. Exch.*, 92 Cal. App. 4th 321, 327 (2001) (same).
[24] National Union Reply at 17.

Policy containing the LBC could be terminated mid-term.[25] In that event, according to National Union, the LBC would no longer be adopted by the National Union Umbrella Policy, and the OAE would take effect.[26] National Union thus argues the OAE is "a belt-and-suspenders" provision.[27]

The PCOH Endorsement "follow[s] the terms, definitions, conditions, and exclusions of the Scheduled Underlying Insurance."[28] "Scheduled Underlying Insurance" is a defined term and refers to specific insurance policies in effect at the time the 2011 National Union Umbrella Policy was executed.[29] In the event the Scheduled Underlying Insurance was cancelled mid-term, this Court is not convinced the PCOH Endorsement would be affected. The PCOH Endorsement would already have adopted the terms of those now cancelled policies.

Under California law, "contracts—even insurance contracts—are construed to avoid rendering terms surplusage."[30] To read the PCOH Endorsement as adopting the LBC would render the OAE superfluous. On the other hand, the OAE contains no language explicitly superseding or nullifying the follow-form language of the

---

[25] *Id*. at 18.
[26] *Id*.
[27] *Id*. at 19.
[28] JPA Ex. 17 at NATIONALUNION_0001915.
[29] *Id*. at NATIONALUNION_0001873-74.
[30] *ACL Techs., Inc. v. Northbrook Prop. & Cas. Ins. Co.*, 17 Cal. App. 4th 1773, 1785 (1993), *as modified* (Sept. 21, 1993).

PCOH Endorsement. A genuine issue of material fact exists: was the PCOH Endorsement intended to incorporate the language of the LBC in full, including the Deemer Clause? The Court cannot make this determination on a motion for summary judgment.[31]

### C. The Trailing Retention Endorsement

The parties dispute whether the Trailing Retention Endorsement is implicated in this case, and, if so, how the Trailing Retention Endorsement impacts coverage.

The Court cannot yet interpret this Endorsement. By its plain language, the Trailing Retention Endorsement is only triggered if the aggregate limits of liability under any "underlying insurance" are reduced or exhausted by the payment of "loss."[32] "Loss" "means those sums paid in the settlement a claim or 'suit' or satisfaction of a judgment which the 'insured' is legally liable to pay as damages because of 'bodily injury', 'property damage', or 'personal and advertising injury', after making proper deduction for all recoveries and salvages."[33]

This trigger language means the converse is also true: under the plain language of the Trailing Retention Endorsement, if Mattel has *not yet* reduced or exhausted

---

[31] *See, e.g.*, *Capano*, 2013 WL 2724634, at *2 ("Therefore, summary judgment will not be granted if it appears that there is a material fact in dispute or that further inquiry into the facts would be appropriate." (citation omitted)).
[32] *See, e.g.*, JPA Ex. 19 at ACE-RNP00000873.
[33] *Id*. at ACE-RNP00000842.

the limits of any "underlying insurance" by the payment of "loss," the Trailing Retention Endorsement has not been triggered.

Such a clarification means a great deal in the context of the duty to defend. Based on the language of the Trailing Retention Endorsement, if Mattel has paid "loss" which eroded or exhausted the limits of the policies underlying Chubb's Umbrella Policies, then the Trailing Retention Endorsement is triggered, removing Chubb's duty to defend.[34] If the "underlying policies" are untapped, and the Trailing Retention Endorsement is not triggered, then Chubb maintains the duty to defend, as the Trailing Retention Endorsement's duty-to-defend disclaimer has not and cannot take effect without the Trailing Retention Endorsement first having been triggered. Such an outcome is curious: if the "underlying policies" are untapped, Chubb has a duty to defend, but if Mattel has *already ever* paid any "loss" under the "underlying policies" Chubb has no duty to defend. The Court is not convinced this outcome reflects the parties' intent.

Counsel for Starr explained, at oral argument, that it believes the Trailing Retention Endorsement, at most, impacts the RNPS Claims allocated to 2013, as 2013's Primary Policy is the only first-layer policy implicated.[35] The Court is not so certain, as the language of the Trailing Retention Endorsement indicates a Trailing

---

[34] *Id*. at ACE-RNP00000873.
[35] Tr. 165:6-15.

Retention is implicated where *any* of the "underlying insurance" policies have been reduced or exhausted by "loss."[36] The Umbrella Policies sit above various first-layer policies, including the Primary Policies and other policies which are not relevant to this action.[37] Under the plain language of the Trailing Retention Endorsement, if any of the aggregate limits of these "underlying policies" are reduced or exhausted by "loss" paid in *unrelated cases*, the Trailing Retention Endorsement may be triggered in *this case*, potentially eliminating Chubb's duty to defend.

Additionally, the Trailing Retention Endorsement, unlike the Corridor Retention Endorsements, does not clarify whether it applies per claim or per occurrence. The Trailing Retention Endorsement defines a "Trailing Retention" as an amount Mattel will pay "in the settlement of any claim or 'suit' to which this policy applies."[38] This language appears to indicate that a Trailing Retention is only due in cases Mattel settles, as opposed to cases where a judgment is entered against Mattel – a result which seems unintended. This language concerning "any claim or suit" potentially – but inconclusively – indicates the parties to Chubb's Umbrella Policies intended for the Trailing Retention Endorsement to apply on a per claim basis.

---

[36] *See, e.g.*, JPA Ex. 19 at ACE-RNP00000873.
[37] *Id*. at ACE-RNP00000823-826 (outlining the various policies included as "underlying insurance" for the 2013 Umbrella Policy).
[38] *Id*. at ACE-RNP00000873.

If the Trailing Retention applies on a per claim basis, Chubb's duty to defend would be further reduced. Mattel would be required to pay a Trailing Retention for *every* RNPS Claim allocated to a policy year in which the Trailing Retention Endorsement has been invoked (potentially every relevant policy year, as explained above), thereby preventing Mattel from seeking defense in *any* RNPS Claim.

The Court remains uncertain that any of the explanations for the Trailing Retention Endorsement provided by the Parties clearly evidences the parties' intent given the strangeness of the provision. This genuine issue of material fact precludes a summary judgment ruling on the workings of the Trailing Retention Endorsement.[39]

The Motions for Summary Judgment are resolved in accordance with this letter and the Prior Opinion.

**IT IS SO ORDERED.**

/s/ Meghan A. Adams

**Meghan A. Adams, Judge**

---

[39] *See, e.g.*, *Capano*, 2013 WL 2724634, at *2 ("Therefore, summary judgment will not be granted if it appears that there is a material fact in dispute or that further inquiry into the facts would be appropriate." (citation omitted)). There is no right to summary judgment. *Cross v. Hair*, 258 A.2d 277, 278 (Del. 1969).